IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JOSHUA GOODEAU<br>TDCJ-CID No. 2071610, | §<br>§<br>§ | |
| Plaintiff, | §<br>§ | |
| v. | §<br>§ | 2:23-CV-071-Z-BR |
| WILLIAM WILLIAMS, *et al.*, | §<br>§<br>§ | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION TO
GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendants' Motion for Summary Judgment on the issue of qualified immunity only (the "Motion") filed by Defendants Kyle Burgess, Erik Gomez, Ashton Sampson, Alejandro Sosa, and Jason Williamson. (ECF 26). For the reasons stated herein, the Magistrate Judge recommends that the Motion be GRANTED.

**I.    BACKGROUND**

On September 13, 2021, Plaintiff Joshua Goodeau was an inmate held in custody by the Texas Department of Criminal Justice ("TDCJ") in the Bill Clements Unit. (ECF 27 at 2-3). Defendants state that, at that time, Plaintiff was "classified as a security risk because of his history of violence and violations of TDCJ policies." (ECF 27 at 6). Because of this classification, Plaintiff was placed in administrative segregation, where he was housed away from other inmates, and also placed on state and personal property restrictions.[1] (*Id.* at 6-7). Plaintiff alleges that in the course

---

[1] Defendants at times state that they approached Plaintiff's cell for the purpose of placing Plaintiff on state and personal property restrictions, but at other times state that they approached Plaintiff's cell to "enforce" the restrictions already placed on the Plaintiff. Although this difference may not impact the analysis, the Court understands that Defendants approached Plaintiff's cell for the purpose of initially placing Plaintiff on these restrictions, but may have been referring to this process as "enforcing" the restrictions.

of placing Plaintiff on these restrictions, a five-man team, along with other officers, approached his door and he was "stripped out, and upon exiting the cell" he was "slammed by [Defendants Sosa and Sampson]," and Defendant Burgess "started punching [him] while [he] was on the ground in handcuff's [sic] and leg restraint's [sic] along with [Defendants Sosa and Sampson]." (ECF 3 at 4). Plaintiff asserts that Defendants Williamson and Gomez did not "try to stop excessive force." (*Id.*). Plaintiff also states that Defendant Burgess told him that the officers "had order's [sic] to beat [him] up whether [he] came out the cell or not." (*Id.*). Defendants state that, when they arrived at Plaintiff's cell, they provided instructions as to what was expected, and Plaintiff complied with Defendants' instructions to submit to a search, as well as to the application of hand and leg restraints. (ECF 27 at 7). Defendants claim that when Plaintiff was assisted to a standing position, he "purposefully and suddenly lunged at Defendant Sosa, striking him with his shoulder." (*Id.*). Defendants then state that Plaintiff then fell to the ground, and the five-man team attempted to regain control by following him to the ground and applying their body weight to him. (*Id.*). Defendants state that Plaintiff continued to resist by "continuously [curling] his body and [pushing] his legs against the cell door." (*Id.* at 7-8). Defendants further assert that Defendant Burgess applied two sets of punches to the Plaintiff over the course of approximately thirteen seconds, after which Plaintiff stopped resisting. (*Id.* at 8). Defendants state that as a result of the altercation, Plaintiff was "seen by TDCJ medical staff for a small laceration to his left eyebrow," and was "treated with ibuprofen and ice for the injury." (ECF 27 at 8).

## II.   SUMMARY JUDGMENT STANDARD

### A.   TRADITIONAL SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper

if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must resolve all reasonable doubts in favor of the party opposing the motion. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

      The movant has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Anderson*, 477 U.S. at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The nonmovant then must provide affirmative evidence to defeat summary judgment. *Anderson*, 477 U.S. at 257. No "mere denial of material facts nor...unsworn allegations [nor] arguments and assertions in briefs or legal memoranda" will suffice to carry this burden. *Moayedi v. Compaq Comput. Corp.*, 98 F. App'x 335, 338 (5th Cir. 2004). The Court requires "significant probative evidence" from the nonmovant in order to dismiss a request for summary judgment supported appropriately by the movant. *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). The Court must consider all evidence but must not make any credibility determinations or weigh the evidence. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

**B.**    **QUALIFIED IMMUNITY DEFENSE**

      In the instant Motion, Defendants move for summary judgment on the affirmative defense of qualified immunity. (*See* ECF 27). "The doctrine of qualified immunity protects government

officials from civil damages liability when their actions could reasonably have been believed to be legal." *Argueta v. Jaradi*, 86 F.4th 1084, 1088 (5th Cir. 2023) (citing *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc)). Once an officer pleads qualified immunity, the plaintiff has the burden to establish that the officer violated the plaintiff's clearly established federal rights. *Argueta*, 86 F.4th at 1088 (citing *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005)). "This is a demanding standard." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1517 (2016). Because qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law . . . we do not deny its protection unless existing precedent places the constitutional question beyond debate." *Argueta*, 86 F.4th at 1088 (internal citation omitted).

A qualified immunity defense alters the usual summary judgment burden of proof. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id.* To trigger the qualified immunity framework, however, the government official must "satisfy his burden of establishing that the challenged conduct was within the scope of his discretionary authority." *Sweetin v. City of Texas City*, 48 F.4th 387, 392 (5th Cir. 2022) (quoting *Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019)). For example, in *Sweetin*, the Fifth Circuit held this "oft-overlooked threshold requirement" was dispositive "because state law does not give a permit officer the authority to conduct stops of any kind." *Sweetin*, 48 F.4th at 392. In this case, however, Goodeau does not dispute that Defendants were acting within the scope of their duties.

To determine if an official acting within the scope of his or her duties is entitled to qualified immunity, courts conduct a two-step analysis. First, they examine whether the plaintiff has shown

a violation of a constitutional right under current law. *Bevill v. Fletcher*, 26 F.4th 270, 275 (5th Cir. 2022) (quoting *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019)). Second, if a violation has occurred, courts determine whether the right in question was "clearly established" at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct. *Id.* In short, an officer is entitled to qualified immunity "if there is no violation, or if the conduct did not violate law clearly established at the time." *Bailey v. Iles*, No. 22-30509, 2023 WL 8062239, at *2 (5th Cir. Nov. 21, 2023). Courts have the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Each Defendant's conduct must be analyzed separately to determine if he is entitled to qualified immunity.

### III.  ANALYSIS

#### A. PLAINTIFF'S EXCESSIVE FORCE CLAIMS

Plaintiff asserts that Defendants Burgess, Sampson, and Sosa used excessive force when placing Plaintiff on property restrictions. In addressing an excessive force claim brought under section 1983, the analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. *Baker v. McCollan*, 443 U.S. 137, 140 (1979) ("The first inquiry in any § 1983 suit" is "to isolate the precise constitutional violation with which [the defendant] is charged."). In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's bar on cruel and unusual punishment, which are the two primary sources of constitutional protection against physically abusive governmental conduct. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The validity of the claim must then be judged by reference to the specific constitutional standard that governs that right, rather than to some generalized "excessive force" standard. *Id.* (*cf. Tennessee v. Garner*, 471

U.S. 1 (1985 (analyzing a claim of excessive force to effect an arrest under the Fourth Amendment standard); *Whitley v. Albers*, 475 U.S. 312 (1986) (analyzing a claim of excessive force to subdue a convicted prisoner under the Eighth Amendment standard).

It is clearly established law that prison staff cannot cause the unnecessary and wanton infliction of pain. *Whitley v. Albers*, 475 U.S. 312, 320 (1986). The "core judicial inquiry" into a plaintiff's claim of excessive force under the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Martin v. Seal*, 510 F. App'x 309, 312 (5th Cir. 2013) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). The inquiry has two components: 1) an objective component that focuses on whether the alleged wrongdoing was nontrivial and harmful enough to violate the constitution; and 2) a subjective component that focuses on the mental state of the alleged wrongdoer. *Hudson*, 503 U.S. at 7-8. Courts look to five nonexclusive factors to make this determination: 1) the extent of the injury suffered; 2) the need for the application of force; 3) the relationship between the need for the application of force and the amount of force actually used; 4) the threat reasonably perceived by the responsible officials; and 5) any efforts made to tamper the severity of a forceful response. *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998) (citing *Hudson*, 503 U.S. at 7). Courts may consider these factors in any order. *Id.* "Excessive force claims are necessarily fact-intensive; whether the force used is excessive or unreasonable depends on the facts and circumstances of each particular case." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (internal quotations omitted). Therefore, the Court will analyze the *Hudson* factors as applied to Plaintiff's claims.

1. **THE EXTENT OF THE INJURY SUFFERED**

The Eighth Amendment's prohibition of cruel and unusual punishment "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use

of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992). The Fifth Circuit has expressly held that a plaintiff bringing an Eighth Amendment excessive use of force claim against a correctional officer must show injuries that are more than *de minimis*, that is, the plaintiff's injuries must be "significant, serious, or more than minor." *Id.* at 9-10. Although a showing of "significant injury" is no longer required in the context of an excessive force claim, "we do require a plaintiff asserting an excessive force claim to have suffered at least some form of injury." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)). The injury must be more than a *de minimis* injury and must be evaluated in the context in which the force was deployed. *Glenn*, 242 F.3d at 314. "In *Williams*, for example, this court held that the loss of breath and dizziness suffered when the suspect was allegedly choked while an officer searched his mouth did not amount to an [sic] cognizable injury." *Id.* "This court stated that '[w]henever a detainee is physically searched by an officer, a physical confrontation inevitably results' and therefore concluded that fleeting dizziness, temporary loss of breath, and coughing did not rise to the level of a constitutional violation." *Id.* (citing *Williams*, 180 F.3d at 704). However, when force is employed and the resultant injury is unrelated to the necessary force required to restore order and is motivated instead by malice, such injury cannot be *de minimis*. *Id.*

Here, medical records show that after the altercation, TDCJ medical staff saw Plaintiff for a small laceration to his nose and left eyebrow, and was treated with ibuprofen and ice for the injury. (ECF 27 at 8; ECF 28 at 3-4); *see Gobert v. Caldwell*, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (finding that "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's [civil rights] allegations"). Courts have held that injuries of the type suffered by Plaintiff are relatively minor, and weigh against a finding of excessive force. *Contreras v. Wauson*,

No. 5:21-CV-00038-C, 2023 WL 9508831, at *6 (N.D. Tex. July 5, 2023) (finding that "a small laceration above [the plaintiff's] eye requiring a couple stitches" was a *de minimis* injury); *Johnson v. Hill*, 514 F. Supp. 3d 958, 969 (S.D. Tex. 2021) (finding that a small laceration above a prisoner's eye, which was treated with stitches and ibuprofen, was a minor injury weighing against a finding of excessive force); *Pitman v. Collum*, No. 6:17cv321, 2018 WL 4572713, at *6 (E.D. Tex. Aug. 6, 2018) (finding that the plaintiff's injuries were *de minimis* when he suffered a "red and black bruise on the inside of his upper arm," "redness on his nose and face," "a thin red line around his neck," "a small laceration to his lower lip, a red and swollen eye, and a red/bloody sclera"), *report and recommendation adopted*, No. 6:17cv321, 2018 WL 4565054. Accordingly, this factor supports the conclusion that the force used against the Plaintiff was not excessive as a matter of law.

2. **THE NEED FOR THE APPLICATION OF FORCE**

Defendants assert that, while attempting to place Plaintiff on property restrictions, Plaintiff "purposefully and suddenly lunched at Defendant Sosa, striking him with his shoulder." (ECF 27 at 7). Plaintiff, however, states that the alleged impact to Defendant Sosa would have been done with his "left shoulder, even though [he his] right handed," meaning that he would have hit Defendant Sosa with his "weaker side." Plaintiff also states that Defendant Sosa "didn't and wouldn't suffer any harm due to his protective equipment he had on." (ECF 35 at 4). Competent summary judgment evidence indicates that Plaintiff is a historically violent inmate, having "several previous staff assaults and use of force incidents in the two years preceding this event." (ECF 27 at 3; *see* ECF 28, Ex. B). Further, at the time of the incident, Plaintiff was "classified as a security risk because of his history of violence and violations of TDCJ policies, and was held in "administrative segregation away from other inmates" because of that classification. (ECF 27 at

8

2). Finally, the video recording of the incident clearly shows Plaintiff suddenly lunging at Officer Sosa. (ECF 28, Ex. D at 3:35). It was after Plaintiff lunged at Officer Sosa and fell to the ground that the five-man team followed Plaintiff to the ground and "jumped on top of him to regain control." (ECF 27 at 14). Plaintiff states that at that point, he "couldn't have kicked or and [sic] pushed off [his] cell door" because he was located further away from the door, and denies that he resisted the officers while he was on the ground. (ECF 35 at 4-5). The video recording of the incident, however, does show Plaintiff resisting Defendants' attempts to regain control by moving around on the ground, pushing his feet against the cell door several times. (ECF 28, Ex. D at 3:36-3:45). Therefore, the Court finds some force was needed in response to Plaintiff lunging at Officer Sosa and continuing to resist officers' attempts to regain control once on the ground.

### 3. RELATIONSHIP BETWEEN NEED FOR FORCE AND AMOUNT OF FORCE USED

Defendants acknowledge that the officers: 1) applied body weight to Plaintiff on the ground after he fell in the course of lunging at an officer; 2) attempted to control Plaintiff's kicking legs and moving body while on the ground; and 3) one officer applied "two separate and rapid sets of punches to Goodeau as he attempted to break free from the officers." (ECF 27 at 15). This coincides with the use of force alleged by the Plaintiff: that the officers followed hm to the ground and applied body weight, as well as punches to the head and face. (ECF 35 at 4). Although Plaintiff asserts that the use of force continued after he stopped resisting, (*Id.* at 5), video recordings are inconsistent with Plaintiff's version of the altercation.[2] (ECF 28, Ex. D at 3:35-4:10).

---

[2] While the Court is to review the facts in the light most favorable to the non-moving party, "a plaintiff's version of the facts should not be accepted for purposes of qualified immunity when it is 'blatantly contradicted' and 'utterly discredited' by video recordings." *Hodge v. Engleman*, 90 F.4th 840, 845-46 (5th Cir. 2024) (quoting *Trammel v. Fruge*, 868 F.3d 332, 338 (5th Cir. 2017)). The U.S. Supreme Court has instructed that, when the video evidence is conclusive, the Court should "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007). "In sum, a court may rely on video evidence to resolve any claimed genuine disputes of material fact and rule on summary judgment." *Hodge*, 90 F.4th at 846. Therefore, when the video "blatantly contradicts" Goodeau's version of events, the video will control.

Even assuming that Plaintiff did not actively resist the officers' attempts to restrain him once he was on the ground, summary judgment evidence demonstrates that the officers deployed force in a reasonable manner. Indeed, "[t]he Fifth Circuit has consistently found no excessive force where prison officials employ force against inmates refusing to comply with orders." *Schneider v. Kaelin*, No. C. 12-233, 2013 WL 1867611, at *5 (S.D. Tex. Apr. 21, 2013) (citing *Thomas v. Comstock*, 222 F. App'x 439, 442 (5th Cir. 2007) (per curiam)). Officials are justified in using some degree of force in "a good-faith effort to maintain or restore discipline" when a prisoner refuses to cooperate with legitimate directives of an official. *Gonzalez v. Rowe*, No. 5:20-CV-052-BQ, 2020 WL 4811005, at *3 (N.D. Tex. July 27, 2020) (finding "some degree of force" by officers was justified when inmate "refus[ed] to comply with the Officers' repeated orders to lie on the cell's floor" because "[d]isobeying orders poses a threat to the order and security of an institution"); *see Lara-Haynes v. Garcia*, No. 2:19-CV-056-Z-BR, 2021 WL 295841, at *7 (Jan. 6, 2021) (finding that "three strikes with a closed fist, when the Plaintiff was in the process of assaulting [an officer] by spitting on him and lunging towards him, is not excessive"). Therefore, the Court finds that the level of force deployed, resulting in a *de minimis* injury, was not excessive or disproportionate to Plaintiff's disruptive behavior.

4. **THE THREAT PERCEIVED BY OFFICERS**

As discussed, competent summary judgment evidence indicates that Plaintiff is a historically violent inmate, (ECF 27 at 3; *see* ECF 28, Ex. B), was classified as a security risk because of his history of violence, and was being held in administrative segregation due to that classification. (ECF 27 at 2). Finally, the video recording of the incident clearly shows Plaintiff suddenly lunging at Officer Sosa. (ECF 28, Ex. D at 3:35). "This was not a random, unprovoked application of force; rather, it was an immediate response to a serious security issue." *Contreras*

*v. Wauson*, No. 5:21-CV-00038-C, 2023 WL 9508831, at *6 (N.D. Tex. July 5, 2023). Accordingly, the Court determines that, based on the summary judgment evidence, the officers perceived a legitimate threat, and responded with a reasonable use of force.

5. **EFFORTS TO TEMPER FORCE**

The competent summary judgment evidence indicates that the officers' use of force stops abruptly when Plaintiff stops moving, and the overall use of force lasts for roughly 40 seconds total. (ECF 28, Ex. B at 3:35-4:15). The officers likewise verbally directed Plaintiff to stop resisting and to comply. (*Id.*). Throughout the encounter, none of the officers used any weapons, and their force was a direct response to Plaintiff lunging toward the officers, and attempting to regain control once the Plaintiff was moving around on the ground. *See Contreras v. Wauson*, No. 5:21-CV-00038-C, 2023 WL 9508831, at *6 (N.D. Tex. July 5, 2023). The Court determines that this supports a finding that the officers did not use excessive force.

In sum, and as argued by the Defendants, each of the *Hudson* factors weigh against finding that Defendants acted with the intent to harm Plaintiff, rather than to restore order and regain security. Moreover, even if factual disputes remain as to whether Plaintiff continued to resist once he was on the ground, it is not enough to overcome Defendants Burgess, Sampson, and Sosa's entitlement to qualified immunity. The undersigned therefore recommends that Defendants' Motion for Summary Judgment as to Defendants Burgess, Sampson, and Sosa be granted on those grounds.

6. **CLEARLY ESTABLISHED LAW**

"It is not enough for Plaintiff to show that Defendant used excessive force against him. To defeat Defendant's assertion of qualified immunity, it must be 'beyond debate' that Defendant broke the law." *Contreras v. Wauson*, No. 5:21-CV-00038-C, 2023 WL 9508831, at *6-7 (N.D.

Tex. July 5, 2023) (finding that it was not "obvious" or "beyond debate" that the defendant officer's use of force in responding to a prisoner refusing to enter his cell, actively resisting, and attempting to flee from officers, was unconstitutional). For a violation of clearly established federal rights to occur, "[p]re-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997). If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact. *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005). Here, even if Plaintiff's allegations were found to demonstrate a constitutional violation for the excessive use of force, the law was not clearly established at the time of the incident. *See Schneider v. Kaelin*, No. C. 12-233, 2013 WL 1867611, at *5 (S.D. Tex. Apr. 21, 2013) (noting that the Fifth Circuit has consistently found no excessive force where prison officials employ force against inmates refusing to comply with orders) (citing *Thomas v. Comstock*, 222 F. App'x 439, 442 (5th Cir. 2007) (per curiam)); *Gonzalez v. Rowe*, No. 5:20-CV-052-BQ, 2020 WL 4811005, at *3 (N.D. Tex. July 27, 2020) (finding "some degree of force" by officers was justified when inmate "refus[ed] to comply with the Officers' repeated orders to lie on the cell's floor" because "[d]isobeying orders poses a threat to the order and security of an institution"); *Lara-Haynes v. Garcia*, No. 2:19-CV-056-Z-BR, 2021 WL 295841, at *7 (Jan. 6, 2021) (finding that "three strikes with a closed fist, when the Plaintiff was in the process of assaulting [an officer] by spitting on him and lunging towards him, is not excessive"); *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001); *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999); *Contreras v. Wauson*, No. 5:21-CV-00038-C, 2023 WL 9508831, at *6 (N.D. Tex. July 5, 2023); *Johnson v. Hill*, 514 F. Supp. 3d 958, 969 (S.D. Tex. 2021).

## B. FAILURE TO INTERVENE IN USE OF FORCE

Plaintiff asserts that Defendants Wiliamson and Gomez failed to intervene in the alleged use of excessive force. The Eighth Amendment prohibits the infliction of cruel and unusual punishments, and "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). The failure to protect an inmate from the use of excessive force by others can also be an Eighth Amendment violation that may give rise to liability under Section 1983. *See Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) (finding that an officer may be liable under 42 U.S.C § 1983 if she is "present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force"). The focus of the "bystander liability" inquiry is whether the bystander defendant had reasonable opportunity to intercede and prevent the constitutional violation. *Rogers v. Buchanan*, No. 3:12-CV-2458-M-BN, 2015 WL 3439145, at *5-6 (N.D. Tex. Mar. 27, 2015), *report and recommendation adopted as modified*, No. 3:120CV02458-M-BN, 2015 WL 3504518 (N.D. Tex. May 28, 2015). Thus, "an officer may be liable under Section 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Rogers*, 2015 WL 3439145, at *6 (internal quotations omitted).

Here, Plaintiff alleges that Defendants Williamson and Gomez "didn't try to stop excessive force on [him]" when they did not intervene in the instant use of force. (ECF 3 at 5). As discussed, however, Plaintiff was not exposed to excessive force, and the bystander Defendants would not have had reason to believe that a fellow officer was violating Plaintiff's constitutional rights. Defendants state—and competent summary judgment evidence demonstrates—that while

13

"Goodeau was subjected to a five-man team to remove him from his cell . . . the team was supervised by several other TDCJ employees, the whole instance lasted at most 40 seconds, and from the moment Goodeau stopped resisting, force was promptly halted." (ECF 27 at 18). Further, the team of officers was briefed before the encounter as to what use of force was authorized if necessary. (ECF 28, Ex. F). Therefore, because there was no underlying violation of Plaintiff's constitutional rights, Defendants Williamson and Gomez cannot be found liable under a theory of bystander liability.

Even if excessive force had been used against Plaintiff, it is not clearly established that in the circumstances present in this case, a failure to intervene was a violation of Plaintiff's constitutional rights at the time of the incident. *See Mendoza v. Patrick*, No. 5:17-CV-291-BQ, 2018 WL 11251903, at *6-7 (N.D. Tex. 2018) (citing *Johnson v. Evans*, No. 3:06-CV-0766-K, 2009 WL 10681436, at *4 (N.D. Tex. Aug. 3, 2009), *aff'd*, 422 F. App'x 317 (5th Cir. 2011).

To the extent that Plaintiff argues that the bystander officers were deliberately indifferent to a risk of harm against Plaintiff, that argument is likewise without merit.[3] To succeed on a claim of deliberate indifference, a plaintiff must show that: 1) he was incarcerated under conditions that objectively posed a substantial risk of serious harm; and 2) the officer-defendant was deliberately indifferent to the plaintiff's need for protection. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 835.

---

[3] Generally, "the application of the deliberate indifference standard is inappropriate when authorities use force to put down a prison disturbance. Instead, the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (internal quotations omitted).

Here, even while officers were attempting to regain control over Plaintiff, at no time was he faced with a substantial risk of serious harm. Plaintiff asserts that he received two short series of punches to his face and head, which—although certainly painful—did not pose a substantial risk of serious harm to the Plaintiff's well-being. The altercation ended after roughly forty seconds, and Plaintiff sustained only a minor laceration to his left eyebrow, demonstrating that the situation did not escalate such that Plaintiff was at a substantial risk of serious harm. Therefore, Defendants Williamson and Gomez could not have been deliberately indifferent to a substantial risk of serious harm against Plaintiff.

## RECOMMENDATION

For the reasons set forth above, the U.S. Magistrate Judge recommends that Defendants' Motion for Summary Judgment be GRANTED.

## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED June 11, 2024.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).